United States District Court
Office of the clerk
John Joseph Moakley Court House
1 Court House Way, suite 2300
Boston Ma 02210

Christopher M Devine
DOB 11/3/80
6 Morgan Rd Mansfield Ma 02048

Dear United States District Court House,

Please except all information that I have copied and place this in a file to be seen by first justice, this is a discrimination case against the company stop and shop please evaluate very carefully when investigating the information. I do believe that there is 50% or more evidence to prove that I was discriminated by this employer. The Massachusetts Commission Investigator and supervisor, I believe did not investigate all information. Please except all copied information and please take into consideration the complaint filed because I was misled or not told on the time period for this to be filed in court. I would like an attorney if the court can appoint me one that would be great, or give me a referral on one. The damage awards for this lawsuit is around 30 to 40 million in damages that I am seeking; don't forget your fees that will be owed to the court. I would like this at least filed immediately.

I aleast need a Docket #

Thank you

Christopher M Devine

Date OCT 7 2004

*[handwritten top right]* Norwood Hospital has copy off this paper in medical Records

Christopher M Devine
Born in Norwood Massachusetts
Norfolk county on 11/03/ 80
Investment conditions and Will
social security # 011-70-069
Written Sept 20, 2004

The express desire on my wishes

**What is a condition on an investment account?**
    A condition on an investment account is your business with assistance to place money in the account whether its property money invested after sale of real estate or any other investment that has certain restrictions, conditions to keep your money safe from harm.

**Section one**

My wishes

    If I receive any money from a lawsuit of a complaint at my young age of 23 I will drop social security and a condition will be on my investment accounts and will exist.

    The condition says that any money will be invested till my old age of 80 unless changed in a will at my age of 80. Any time before my old age of 80 if passed on if the investment bank dies or forecloses then the money dies or if account exists then the money will be transferred to another bank and are still existent at the age of 80 or reaches the age of 80 then the money goes to the next of kin and is distributed. If alive at the age of 80 or I reach my age of 80 then at that time a will is going to exist like I said before.

**Section 2**

    If I die with property involved then property will be probated and any proceeds from the sale of real estate will be deposited in the investment account and a layer or administrator will be assigned at court to deposit the proceeds into the condition investment account.

**Section 3**
    If I am with someone for awhile I do plan on sharing my wealth with someone, Hey! 70 89 It's only fair

**Section 4**

    My family has no rights to sue any one for anything if I pass on. Nana Devine had hard toilet paper not soft it was blue if I can recall.

    Notarized by me

*[signature]* Christopher M Devine

Protection against greed or inheritance (conditions and restrictions)

Education –
 Southeastern Regional Vocational Technical High school Major- Electronics- Academic diploma
Massasoit Community College - Major - Human services / non degree.

*[handwritten bottom left]* lawyer

[illegible court stamp]

[illegible] OCT 12 P [illegible] 29

[illegible] COURT
[illegible]

*Chris Devine*
*DOB*
*11/3/50*

File in federal court (Boston) filing fee can and be waved
Christopher Devine VS Stop and shop
MCAD # 01131476 EEOC# 16CA11792
Summons 6 people from my employment to court
Heather furngis

Fatima Cabral

Paul Therian

Diane paris

Alan Bruno

Bob Slarve

   After hire of my employment I have told my employer stop and shop that I
had a learning disability so they placed me on the register anyway. Then I was
disciplined not suspended for an order short on 3/300. 2nd disciplinary action was that I
was suspended because again an order was short on 4/6/00. A threat of termination on
4/8/00 a disciplinary action related to 4/6/00. 4/12/00 was nothing but lies when bagging
an order. On 4/16/00 after being disciplined 4 times on the register they did not
accommodate me somewhere else and they continued to keep me on the register, so I
asked for an accommodation for a bagger to help me concentrate on the companies
money they did not do so and I was not happy and I did not work so they made excuses
and lies and sent me home and in the disciplinary complaint on 4/16/00 made me look
like a problem child after repeatedly telling them I have a learning disability.
It took them awhile to change my position to the bakeshop in to April into March of
2000. So there was no insubordination, disruptive behavior in front of customers and I
never mistreated a coworker and did meet job standards and if I was late I would call or I
would be least 5 minutes late, so my attendance would be just a little outstanding. I was
the subject of harassment during the employment. *Please keep in mind that a learning disability is a different*
*way of learning and that keep in mind that I am very*
*smart and Intelligent*

# REPORT OF CHANGE

**FORM 191**

**The Stop&Shop Companies, Inc.**

| EFFECTIVE DATE | 4-8-00 |
| DIVISION/ DEPT. | BSD |
| WORK LOCATION | 10-007 |

| NAME (FIRST) | (MIDDLE INITIAL) | (LAST) | SOCIAL SECURITY NO. | C/D |
| Chris | | Devine | 6(1 70 0.069 | |

**New, Re-hired or Terminated Employees ONLY**

HOME ADDRESS (NO. & STREET) | | CITY | STATE | ZIP CODE

| SEX (M/F) | ETHNIC ORIGIN (SEE GRPS. BELOW) | DATE OF BIRTH (MO., DY., YR.) | PAYROLL ACCOUNT NO. | ☐ NEW HIRE  ☐ RE-HIRE |

JOB TITLE (CLASS) | GRADE

TRANSFERRED FROM _____ (LOCATION & ACCOUNT NO.) TO _____ (LOCATION & ACCOUNT NO.)

JOB TITLE (CLASS) CHANGED FROM _____ TO _____

GRADE CHANGED FROM _____ TO _____

CURRENT PAY RATE $ _____ PER (Hr./Wk./Pd.)   NEW PAY RATE $ _____ PER (Hr./Wk./Pd.)

**EXPLAIN ACTION(S) FULLY**

A meeting was held on April 8,00 to discuss Chris' suspension. Linda Immde, Kim Cardarelli, and Bob Stakve present. Chris let an order for 120.00 go w/out payment. Because Chris is on Cash Control, he was suspended. This is not acceptable. If it happens again he will be suspended pending termination. (Use reverse side if necessary)

## APPROVALS

| Signature(s) | Date |
| Bob St | |
| | |
| | |
| | |

## ETHNIC ORIGIN GROUPS

1. White-not of Hispanic Origin
2. Black-not of Hispanic Origin
3. Asian or Pacific Islander
4. American Indian or Alaskan Native
5. Hispanic

## FOR OFFICE USE ONLY

| Actions | Notes |
| WAGE & SALARY | |
| RECORDS | |
| BENEFITS | |
| PAYROLL | |

**ORIGINAL -- FORWARD TO PERSONNEL SERVICES DIVISION IMMEDIATELY AFTER OBTAINING ALL NECESSARY SIGNATURES.**

# REPORT OF CHANGE

**FORM 191**

**The Stop&Shop Companies, Inc.**

| | |
|---|---|
| EFFECTIVE DATE | 4-6-00 |
| DIVISION/ DEPT. | 10 |
| WORK LOCATION | 007 |

NAME (FIRST) **Chris**  (MIDDLE INITIAL)  (LAST) **Peare**

SOCIAL SECURITY NO. | C/B

**New, Re-hired or Terminated Employees ONLY**

HOME ADDRESS (NO. & STREET) | CITY | STATE | ZIP CODE

SEX (M/F) | ETHNIC ORIGIN (SEE GRPS. BELOW) | DATE OF BIRTH (MO., DY., YR.) | PAYROLL ACCOUNT NO.

☐ NEW HIRE  ☐ RE-HIRE

JOB TITLE (CLASS) **Cashier # 139**   GRADE

TRANSFERRED FROM (LOCATION & ACCOUNT NO.) | TO (LOCATION & ACCOUNT NO.)

JOB TITLE (CLASS) CHANGED FROM | TO

GRADE CHANGED FROM | TO

CURRENT PAY RATE $ | PER (Hr./Wk./Pd.) | NEW PAY RATE $ | PER (Hr./Wk./

EXPLAIN ACTION(S) FULLY

On Tuesday night At 10:30 pm Chris waited on a customer the order came out to 122.89, the customer left without paying we asked what happen. He could not explain. Chris is being suspended.

(Use reverse side if necessary)

| APPROVALS | | | ETHNIC ORIGIN GROUPS | FOR OFFICE USE ONLY | |
|---|---|---|---|---|---|
| Signatures | | Date | | Actions | Notes |
| X | | 4-6-00 | 1. White-not of Hispanic Origin | WAGE & SALARY | |
| | | | 2. Black-not of Hispanic Origin | RECORDS | |
| | | | 3. Asian or Pacific Islander | BENEFITS | |
| | | | 4. American Indian or Alaskan Native | PAYROLL | |
| | | | 5. Hispanic | | |

**ORIGINAL – FORWARD TO PERSONNEL SERVICES DIVISION IMMEDIATELY AFTER OBTAINING ALL NECESSARY SIGNATURES.**

# REPORT OF CHANGE

**FORM 191**

**The Stop&Shop Companies, Inc.**

| EFFECTIVE DATE | 4-12-00 |
|---|---|
| DIVISION/DEPT. | 10 |
| WORK LOCATION | 027 |

| NAME (FIRST) | (MIDDLE INITIAL) | (LAST) | SOCIAL SECURITY NO. | C/D |
|---|---|---|---|---|
| CHRIS | D | DIVINE | | |

**New, Re-hired or Terminated Employees ONLY**

| HOME ADDRESS (NO. & STREET) | | | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|---|

| SEX (M/F) | ETHNIC ORIGIN (SEE GRPS. BELOW) | DATE OF BIRTH (MO., DY., YR.) | PAYROLL ACCOUNT NO. | |
|---|---|---|---|---|
| | | | | ☐ NEW HIRE  ☐ RE-HIRE |

| JOB TITLE (CLASS) | | GRADE |
|---|---|---|

|  | (LOCATION & ACCOUNT NO.) | (LOCATION & ACCOUNT NO.) |
|---|---|---|
| TRANSFERRED FROM | TO | |
| JOB TITLE (CLASS) CHANGED FROM | TO | |
| GRADE CHANGED FROM | TO | |
| CURRENT PAY RATE $ | PER (Hr./Wk./Pd.) | NEW PAY RATE $ | PER (Hr./Wk./P... |

**EXPLAIN ACTION(S) FULLY**

CHRIS WAS OBSERVED FROM THE MEZZANINE BAGGING FOR A CUSTOMER ON REG. 16 AT 8:30 P... OR SO, INSTEAD OF PLACING ITEMS IN THE BAG HE WAS THROWING OR DROPPING THEM

(Use reverse side if necessary)

| APPROVALS | | | ETHNIC ORIGIN GROUPS | FOR OFFICE USE ONLY | |
|---|---|---|---|---|---|
| Signatures | | Date | | Actions | Notes |
| Paul Thernien | | 4-12-00 | 1. White-not of Hispanic Origin | WAGE & SALARY | |
| | | | 2. Black-not of Hispanic Origin | RECORDS | |
| | | | 3. Asian or Pacific Islander | BENEFITS | |
| | | | 4. American Indian or Alaskan Native | PAYROLL | |
| | | | 5. Hispanic | | |

**DUPLICATE – RETAIN FOR YOUR FILES**

INTO THE AREAS HE ? NOTICED HIM
PICKING UP A CANTALOPE AND DROPPING
IT FROM A HEIGHT OF 2 FT (APX)
INTO THE EMPTY BAG AS IT SMASHED
ON THE BAG HOLDER. AT THAT POINT
I CALLED THE C.S.S. TO ASK CHRIS TO
COME TO THE MANAGERS OFFICE. I THEN
TOLD HIM I WOULD LIKE HIM TO SEE
THE BAGGING VIDIO BECAUSE OF THE WAY
HE WAS BAGGING. (THIS WAS DONE IN THE PRESENCE
OF KIM CARTARELLI) BAGGING VIDIO COULD NOT
BE FOUND SO I EXPLAINED TO HIM THE
PROPER TECHNIQUE'S OF BAGGING A
ORDER.

# REPORT OF CHANGE .

**FORM 191**

The Stop&Shop Companies, Inc.

EFFECTIVE DATE 4/16

DIVISION/ DEPT. 10

WORK LOCATION 007

| NAME (FIRST) Chris | (MIDDLE INITIAL) | (LAST) Reuve | SOCIAL SECURITY NO. 0 1 1 7 0 0 6 9 | C/D |

**New, Re-hired or Terminated Employees ONLY**

| HOME ADDRESS (NO. & STREET) | | CITY | STATE | ZIP CODE |

| SEX (M/F) | ETHNIC ORIGIN (SEE GRPS. BELOW) | DATE OF BIRTH (MO., DY., YR.) | PAYROLL ACCOUNT NO. | ☐ NEW HIRE  ☐ RE-HIRE |

| JOB TITLE (CLASS) Cashier | | | GRADE |

| (LOCATION & ACCOUNT NO.) | | (LOCATION & ACCOUNT NO.) |

**TRANSFERRED FROM** _____ **TO** _____

**JOB TITLE (CLASS) CHANGED FROM** _____ **TO** _____

**GRADE CHANGED FROM** _____ **TO** _____

**CURRENT PAY RATE $** _____ **PER (Hr./Wk./Pd.)** | **NEW PAY RATE $** _____ **PER (Hr./Wk./Pd.)**

**EXPLAIN ACTION(S) FULLY**

On 7/16/00 Chris Reuve was putting his light on every 5 minutes demanding a bagger. I pulled Chris aside and told him there are times when you will not have a bagger. He then said to I see Shawn and Emily standing around doing shit. I told him this not his concern what they were doing about 20 min's later a customer called complaining about him screaming across the front end to the service desk that I not they. Nya bagger. I asked him to come upstairs because he was being disruptive on the front end. (Use reverse side if necessary)

| APPROVALS | | | | | FOR OFFICE USE ONLY | Notes |

ETHNIC ORIGIN GROUPS
1. White-not of Hispanic Origin
2. Black-not of Hispanic Origin
3. Asian or Pacific Islander
4. American Indian or Alaskan Native
5. Hispanic

WAGE & SALARY

RECORDS

BENEFITS

PAYROLL

**ORIGINAL – FORWARD TO PERSONNEL SERVICES DIVISION IMMEDIATELY AFTER OBTAINING ALL NECESSARY SIGNATURES.**

## The Commonwealth of Massachusetts
## Commission Against Discrimination

DOCKET NUMBER:01131476               EEOC/HUD NUMBER:
FILING DATE:05-30-2001                        VIOLATION DATE:12/15/00

------------------------------------------------------------------------

Name of Aggrieved Person or Organization:
Christopher Devine
6 Morgan Road
Mansfield, MA 02048
Telephone Number: (508) 339-5297

------------------------------------------------------------------------

Named is the employer, labor organization, employment agency, or state/local
government agency who discriminated against me:
Stop & Shop, Inc.
Attn:Human Resources
Chauncey Street
Mansfield, MA 02048
Telephone Number:        No. of Employees:20 +

Work Location: Mansfield, MA

------------------------------------------------------------------------

Cause of Discrimination based on:
Disability.
(Acquired Immune Deficiency Syndrome (or AIDS related)).

------------------------------------------------------------------------

The particulars are:
I, Christopher Devine, the Complainant believe that I was
discriminated against by Stop & Shop, Inc., on the basis of
Disability. This is in violation of M. G. L. Chapter 151B S4 P16.

On or about 12/15/00, I left my position as a Bake Shop Cashier
Clerk with Stop & Shop under constructive discharge due to a
harassment and hostile work environment. I believe I was
discriminated against on account of my disability, HIV. I was
employed with the Respondent Stop & Shop for approximately eleven
(11) months in the above stated capacity. In or around 6/00, through
10/00, I experienced severe illness, which caused me to be absent
from work the entire month of 6/00, on an unpaid leave. In or around
11/00, I was diagnosed with HIV. Shortly thereafter, I informed my
manager, Fatima Cabral. I presented her with a doctors' note
requesting reasonable accomodation less strenous work due to my
medical condition HIV. Fatima responded by ripping up the doctors'
note, thus my doctors' request for reasonable accomodation was
denied. After I disclosed my my medical condition HIV to Fatima I
was constantly harassed, and asked on more than one occasion to tell
the store manager, Rob Slarve which I refused. I continued to be the
subject of continued, and further harassment due to my medical
condition HIV, causing a hostile intolerable work environment. As a
result, 12/15/00, was my last day of employment with Stop & Shop. I
believe I was harassed, and subjected to a hostile work environment
on account of my disability, HIV. This is in violation of
Massachusetts General Laws Chapter 151B Section 4 Paragraph 16 all
applicable state, federal statutes Title VII & The Americans With
Disabilities Act.

At Court Federal Court 01/31/06

1) Summons Employees About G

2) Under oath on witness stand and is going to be asked Questions

The truth will be told. The court will accomidate an complaint of discrimination even though if time passes if its aids or mental Illness related.

If I win at court the State of massachussetts will be ~~sued~~ sued for a false Investigative decision of a complaint. ~~at~~ from the mcad.

---

~~Jeannine~~ Jeannine Via you did not call Corporate office to find out the differance between a Lead clerk and a manager you did not Go over mr. watermans Head and talk to some one else. All you did was you took his word for it and you all Lied. Look at Stop & shop Bake off Schedule and you will find that Fatima Cabrals name is not on the schedule for a Lead Clerk Position. mangers set thier own scedule — Fatima is a manager. you Lied



## The Stop & Shop Supermarket Company

 An Ahold USA Company

Quincy Center Plaza, Quincy, MA
P.O. BOX 1942, BOSTON, MA 02105

July 16, 2001

Jeannine Rice
Investigator
Commonwealth of Massachusetts
Commission Against Discrimination
1 Ashburton Place
Suite 601
Boston, MA 02108

**RE: Christopher Devine, Docket No. 01131476**

Dear Ms. Rice,

This is the response of The Stop & Shop Supermarket Company to the above-referenced charge. Stop & Shop did not discriminate against the Complainant in manner whatsoever. Stop & Shop denies all such allegations and asserts that it treated the Complainant fairly and appropriately. The Complainant has provided no evidence to support his claim.

The Complainant was employed as a part-time cashier, then as a part-time bake shop clerk at Stop & Shop's Mansfield, MA store. During his employment, the Complainant had a number of job performance problems, including insubordination, disruptive behavior in front of customers, mistreatment of coworkers, failure to meet job standards, and poor attendance (absenteeism, tardiness).[1] The Complainant was given numerous warnings and, on April 6, 2000, he was suspended for allowing a customer whose order came to $122.89 to leave without paying. The Complainant grieved his suspension through his union and was reinstated.

In June 2000, the Complainant's mother reported that he was hospitalized with a strep infection.[2] He was out of work for several weeks. Sometime thereafter, the Complainant told Fatima Cabral, the department lead clerk, that he had been diagnosed as HIV positive. Following this, the Complainant's job performance deteriorated further, as he began to experience illness due to treatments he was receiving. The Complainant frequently left work early and often failed to complete assigned tasks. Ms. Cabral and

*Fatima is a manager I called human Resures at Shop & Shop. Incorporated*

[1] See Attachment #1.
[2] See Attachment #2.

the Complainant's coworkers did their best to assist the Complainant in completing his work assignments and the department seldom held the Complainant accountable for his poor work performance. Meanwhile, store management was holding the department accountable for maintaining standards and department staff did their best to cover for the Complainant.    *What Standards ?*

In December 2000, the Complainant was verbally reprimanded by an assistant store manager for working without punching in on the time and attendance system. The Complainant complained to his union about the reprimand. The union investigated and found that the store had handled the matter appropriately. The Complainant then informed Ms. Cabral that he was resigning and he gave two weeks notice. The Complainant did not show for his next scheduled shift and the store did not hear from him again.

In response to the particular allegations in the complaint, Stop & Shop states that the Complainant was not constructively discharged. The Complainant never requested a reasonable accommodation; therefore, Stop & Shop did not deny any request for a reasonable accommodation. The only doctor's note Stop & Shop received from the Complainant was at the time of his hospitalization. Further, Stop & Shop did not discriminate against or harass the Complainant in any manner whatsoever. To the contrary, the Complainant was given great latitude considering his poor work performance and his coworkers extended themselves to assist the Complainant as best they could. In addition, Ms. Cabral did encourage the Complainant to speak to the store manager when his job performance deteriorated due to his health issues. *Testimony should have included Chris*

The Commission should dismiss this complaint, as the Complainant has provided no evidence to support his claim. The Complainant has not presented any facts that show that he was treated differently because of an alleged disability. Neither has he established a prima facie case of harassment based on a hostile work environment. The Complainant has not demonstrated that the alleged harassment was severe or pervasive, that his work environment was hostile, i.e., permeated with unwanted harassment, or that the harassment unreasonably interfered with his work performance or otherwise affected the terms or conditions of his employment.

Even if the Complainant could show that a hostile work environment existed, he has not demonstrated that Stop & Shop knew about it and failed to take reasonable and proper steps to address the matter. Stop & Shop's policies provide specific complaint mechanisms.[3] The Complainant did not avail himself of the remedies prescribed in these policies. He did not contact store management, his union representatives, Human Resources, or any other internal company resource with his concerns. The Complainant, therefore, failed to mitigate any damages he may claim he has suffered.

If you have any questions or require additional information, please call me at (617) 770-8154. Also, please address all correspondence relating to this matter to me at P.O. Box 1942, Boston, MA 02105.

---

[3] See Attachment #3.

Dr Michael Ginsberg

**Caritas Norwood Hospital**
**Caritas Southwood Hospital**

Caritas Christi Health Care System      |      800 Washington Street   Norwood, MA 02062   telephone 781.769.2950

July 23, 2001

To Whom This May Concern,

Re: Christopher Devine
DOB: 11/3/80

On September 14, 2001, as part of an Infectious Disease consultation, I gave Mr. Devine a note (written on a prescription pad) as requested by his employer, Stop and Shop.

The note stated he had HIV, that it was safe for him to continue to work at Stop and Shop and asked that he be given every consideration.

Yours very sincerely
Michael Ginsberg, MD.

Employee Schedule Report for BAKE-OFF

STOP & SHOP #7: 10-007

Report created on: 11/03/00 at 3:04p

Schedule date: 11/05/00 - Week end date: 11/11/00

Page: 2

| Employee name | Sun 11/05 | Mon 11/06 | Tue 11/07 | Wed 11/08 | Thu 11/09 | Fri 11/10 | Sat 11/11 | Total |
|---|---|---|---|---|---|---|---|---|
| AKOPOVA SVETLANA | CLERK 1000a- 400p 6:00 | CLERK 1000a- 400p 6:00 | CLERK 1000a- 400p 6:00 | CLERK 1000a- 400p 6:00 | ...... Not Av 0:00 | CLERK 1000a- 400p 6:00 | CLERK 1000a- 400p 6:00 | 30:00 |
| BANKS DIANNE M | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | 0:00 |
| BOLGER MARGARET | CLERK 800a- 200p 6:00 | CLERK 800a-1200p 4:00 | ...... Not Av 0:00 | CLERK 800a-1200p 4:00 | CLERK 800a-1200p 4:00 | CLERK 800a-1200p 4:00 | CLERK 800a-1200p 4:00 | 20:00 |
| BRUNO ALAN W | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | 0:00 |
| DALTON MARGARET A | ...... 0:00 | ...... 0:00 | Not Av 0:00 | Not Av 0:00 | Not Av 0:00 | ...... 0:00 | ...... 0:00 | 0:00 |
| DE CASTRO LEILA M | CLERK 500a-1000a 5:00 | ...... Not Av 0:00 | CLERK 1200p- 400p 4:00 | CLERK 500a-1000a 5:00 | CLERK 500a-1000a 5:00 | CLERK 1200p- 400p 4:00 | CLERK 1200p- 400p 4:00 | 22:00 |
| DEVINE CHRISTOPHER | CLERK 400p- 900p 5:00 | CLERK 400p- 900p 5:00 | CLERK 400p- 900p 5:00 | CLERK 400p- 900p 5:00 | ...... Not Av 0:00 | CLERK 400p- 900p 5:00 | CLERK 400p- 900p 5:00 | 25:00 |
| HOFFMAN JOANNE T | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | 0:00 |
| SMITH VANESSA L | CLERK 800a- 200p meal 6:00 | CLERK 1100a- 800p 300p- 400p 8:00 | CLERK 1200p- 900p 400p- 500p 8:00 | ...... Not Av 0:00 | CLERK 1200p- 900p 400p- 500p 8:00 | CLERK 1200p- 900p 400p- 500p 8:00 | CLERK 300p- 900p 6:00 | 38:00 |
| TOOMEY KATHLEEN M | ...... m 0:00 | Not Av 0:00 | ...... 0:00 | Not Av 0:00 | ...... 0:00 | ...... 0:00 | ...... 0:00 | 0:00 |
| ZAINYEH MICHELE M | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | ...... Not Av 0:00 | 0:00 |

On Employee Schedule Report
For Bake off Fatima
Caprals name is not on
Schedule Report For Bake
Off Dated 11/3/00 at 3:04pm
Schedule date 11/5/00 During
my employment at Stop &
Shop. She is a manager
and not a lead clerk

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**

RE:    **Christopher Devine v. Stop & Shop, Inc.**
DOCKET NUMBER: 01131476
FILING DATE: 05-30-2001
VIOLATION DATE: 12/15/00

## Complainant's Rebuttal following the Investigative Conference

On July 24, 2001, an Investigative Conference regarding the above complaint was held before Jeannine Rice, MCAD Investigator. Present were Mr. Devine, his Attorney, Jon M. Argenziano of the JRI Health Law Institute, and Robert G. Waterman, EEO Manager for the Stop & Shop Supermarket Company (hereafter, S&S).

## I    MCAD should not consider certain information contained in S&S's initial Response Memorandum

In its initial Response Memorandum, S&S referenced, and provided documentation pertaining to several disciplinary actions taken against Mr. Devine in March and April 2000. Although Mr. Devine responded to these incidents in his testimony at the Investigative Conference July 24, 2001, Mr. Waterman indicated that this response should not be considered as it was not relevant to the complaint before the MCAD and because it related to events which occurred over six months prior to Mr. Devine filing his complaint. The Complainant requests that MCAD disregard both the references to these events in S&S's response, as well as Mr. Devine's testimony related to them.

## II    Reasonable Accommodation as requested by the Complainant was not granted

S&S, in both its Response Memorandum and its testimony at the Investigative Conference acknowledged that it had been fully apprised of the exact nature of Mr. Devine's medical condition. Further, it indicated that "Complainant's coworkers did their best to assist the Complainant in completing his work assignments, " and more significantly, "Ms. Cabral [the lead clerk in complainant's department, and whom he recognized as his supervisor] did encourage the Complainant to speak to the store manager when his job performance deteriorated due to his health issues."

The U.S. Equal Employment Opportunity Commission outlines how an individual may request a reasonable accommodation in its publication *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*. In the section entitled "Requesting Reasonable Accommodation," the EEOC indicated that an individual may use "plain English" in making this request. The request need not be made in writing, and may be made in the course of regular conversation. (see attached copy of relevant portions of *Enforcement Guidance. . .*).

Indeed, Mr. Devine informed his employer of his illness and exact condition, HIV infection, which constitutes a recognized disability under the Americans with Disabilities Act. Through regular conversation, as evinced through his testimony at the Investigative Conference, and as acknowledged in Respondent's Response Memorandum, he informed his supervisor that he was having difficulty completing his job tasks and asked that his duties be changed. Mr. Devine clearly complied with the guidelines established by the EEOC for requesting a reasonable accommodation.

Respondent, instead of accommodating, chose to discipline the Complainant by filing a report (see report of 11/8/00 in S&S Response Memorandum) when Mr. Devine, despite staying at work two extra hours, was unable to complete his assigned tasks, instead of "engaging in an informal process to clarify what the individual needs and identify[ing] the appropriate reasonable accommodation" (*Enforcement Guidance. . .#5*). Stop & Shop took no steps to evaluate possible reasonable accommodations, which would have allowed Mr. Devine to continue his employment there. At that point, Mr. Devine felt he had no other choice but to resign.

Employers are not expected to possess psychic abilities and to accommodate without reasonable information. Guidance from the EEOC, however, makes clear that employees don't always know the "magic words" necessary to request accommodations in the workplace. Mr. Devine maintains that he presented a note from his physician requesting less strenuous work via reasonable accommodation to his supervisor at Stop & Shop. Respondent denies ever receiving this particular communication, which in reality would be superfluous. Mr. Devine was clearly entitled to a reasonable accommodation based upon all the foregoing.

Respectfully Submitted,
Complainant Christopher Devine,
By His Attorney,

_____

Jon M. Argenziano, Esq.
JRI Health Law Institute
100 Boylston St., Suite 815
Boston, MA  02116
(617) 988-8700 x208



2

# REPORT OF CHANGE

**FORM 191**

**The Stop&Shop Companies, Inc.**

EFFECTIVE DATE 11/8/00
DIVISION/DEPT. 650
WORK LOCATION 10/007

NAME (FIRST) Christopher  (MIDDLE INITIAL)  (LAST) Divine   SOCIAL SECURITY NO.   C/D

New, Re-hired or Terminated Employees ONLY

HOME ADDRESS (NO. & STREET)   CITY   STATE   ZIP CODE

SEX (M/F)   ETHNIC ORIGIN (SEE GRPS BELOW)   DATE OF BIRTH (MO, DY, YR)   PAYROLL ACCOUNT NO

☐ NEW HIRE  ☐ RE-HIRE

JOB TITLE (CLASS)   GRADE

TRANSFERRED FROM (LOCATION & ACCOUNT NO.)   TO (LOCATION & ACCOUNT NO.)

JOB TITLE (CLASS) CHANGED FROM   TO

GRADE CHANGED FROM   TO

CURRENT PAY RATE $   PER (Hr./Wk./Pd.)   NEW PAY RATE $   PER (Hr./Wk./P.)

**EXPLAIN ACTION(S) FULLY**

Christopher was scheduled to work on Tuesday evening 4-9. Christopher failed to finish the full pan-out excluding Crusty Breads + Muffins. Christopher did not check w/ a manager to let her know that the pan-out was not completed. Christopher left at 11:00 on Tuesday night. If this behavior continues Christopher will be suspended.

### APPROVALS

| Signatures | Date |
|---|---|
| Diana Paris | 11/8 |

### ETHNIC ORIGIN GROUPS

1. White-not of Hispanic Origin
2. Black-not of Hispanic Origin
3. Asian or Pacific Islander
4. American Indian or Alaskan Native
5. Hispanic

### FOR OFFICE USE ONLY

| Actions | Notes |
|---|---|
| WAGE & SALARY | |
| RECORDS | |
| BENEFITS | |
| PAYROLL | |

**ORIGINAL – FORWARD TO PERSONNEL SERVICES DIVISION IMMEDIATELY AFTER OBTAINING ALL NECESSARY SIGNATURES.**

when asked by Diana Paris if Pan-out had been completed, Chris answered yes. Ic stayed Until 11:00 to finish

I stayed two extra hours

I did not frequently leave work early.

wrote me up on the 8th Verbally reprimanded me on the 11th

# REPORT OF CHANGE

**The Stop&Shop Companies, Inc.**

FORM 191

EFFECTIVE DATE _____ 00

DIVISION/ DEPT. _BSD_

WORK LOCATION _10-007_

NAME (FIRST) _Chris_    (MIDDLE INITIAL)    (LAST) _Devine_    SOCIAL SECURITY NO. _011 70 0069_    C/D

**New, Re-hired or Terminated Employees ONLY**

HOME ADDRESS (NO. & STREET) _____    CITY _____    STATE _____    ZIP CODE _____

SEX (M/F) _____    ETHNIC ORIGIN (SEE GRPS. BELOW) _____    DATE OF BIRTH (MO., DY., YR.) _____    PAYROLL ACCOUNT NO _____

☐ NEW HIRE    ☐ RE-HIRE    GRADE _____

JOB TITLE (CLASS) _____

TRANSFERRED FROM _____ (LOCATION & ACCOUNT NO.)    TO _____ (LOCATION & ACCOUNT NO.)

JOB TITLE (CLASS) CHANGED FROM _____    TO _____

GRADE CHANGED FROM _____    TO _____

CURRENT PAY RATE $ _____    PER (Hr./Wk./Pd.)    NEW PAY RATE $ _____    PER (Hr./Wk./P

EXPLAIN ACTION(S) FULLY

Chris was spoken to regarding his tardiness. Over the past 4 weeks, Chris has been late 18 times out of a possible 23. If this continues, he will be suspended. See attached

(Use reverse side if necessar

| APPROVALS | | ETHNIC ORIGIN GROUPS | FOR OFFICE USE ONLY | |
|---|---|---|---|---|
| Signatures | Date | | Actions | Notes |
| BSD | | 1. White-not of Hispanic Origin | WAGE & SALARY | |
| | | 2. Black-not of Hispanic Origin | RECORDS | |
| | | 3. Asian or Pacific Islander | BENEFITS | |
| | | 4. American Indian or Alaskan Native | PAYROLL | |
| | | 5. Hispanic | | |

**ORIGINAL – FORWARD TO PERSONNEL SERVICES DIVISION IMMEDIATELY AFTER OBTAINING ALL NECESSARY SIGNATURES.**

# REPORT OF CHANGE

**FORM 191**

The Stop&Shop Companies, Inc.

| | |
|---|---|
| EFFECTIVE DATE | 11-14-00 |
| DIVISION/ DEPT. | BS D |
| WORK LOCATION | 10-007 |

| NAME (FIRST) | (MIDDLE INITIAL) | (LAST) | SOCIAL SECURITY NO. | C/D |
|---|---|---|---|---|
| Chris | | Devine | 6/1 70 0069 | |

**New, Re-hired or Terminated Employees ONLY**

| HOME ADDRESS (NO. & STREET) | | CITY | | STATE | ZIP CODE |
|---|---|---|---|---|---|
| SEX (M/F) | ETHNIC ORIGIN (SEE GRPS. BELOW) | DATE OF BIRTH (MO., DY., YR.) | PAYROLL ACCOUNT NO. | ☐ NEW HIRE   ☐ RE-HIRE | |
| JOB TITLE (CLASS) | | | | GRADE | |

| | (LOCATION & ACCOUNT NO.) | | (LOCATION & ACCOUNT NO.) |
|---|---|---|---|
| TRANSFERRED FROM | | TO | |
| JOB TITLE (CLASS) CHANGED FROM | | TO | |
| GRADE CHANGED FROM | | TO | |
| CURRENT PAY RATE $ | PER (Hr./Wk./Pd.) | NEW PAY RATE $ | PER (Hr./Wk./Pd.) |

**EXPLAIN ACTION(S) FULLY**

Chris Was Scheduled to Work
4-9 on Tuesday November 11th. Chris did not
Come in to Work Until 4:45 on this Tuesday
evening. Chris did not Call to let us know he'd
be late.

(Use reverse side if necessary)

| APPROVALS | | FOR OFFICE USE ONLY | |
|---|---|---|---|
| Signatures | Date | Actions | Notes |
| Diana Paris | 11/14/00 | WAGE & SALARY | |
| | | RECORDS | |
| | | BENEFITS | |
| | | PAYROLL | |

**ETHNIC ORIGIN GROUPS**
1. White-not of Hispanic Origin
2. Black-not of Hispanic Origin
3. Asian or Pacific Islander
4. American Indian or Alaskan Native
5. Hispanic

**ORIGINAL -- FORWARD TO PERSONNEL SERVICES DIVISION IMMEDIATELY AFTER OBTAINING ALL NECESSARY SIGNATURES.**

During the 11th for 45 minutes I was
being disablized by stop & shop.

*The U.S. Equal Employment Opportunity Commission*

# Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act

## Table of Contents

Introduction

General Principles

Requesting Reasonable Accommodation

Reasonable Accommodation And Job Applicants

Reasonable Accommodation Related To The Benefits And Privileges Of Employment

Types Of Reasonable Accommodations Related To Job Performance

    Job Restructuring

    Leave

    Modified Or Part-Time Schedule

    Modified Workplace Policies

    Reassignment

Other Reasonable Accommodation Issues

Undue Hardship Issues

Instructions For Investigators

Appendix: Resources For Locating Reasonable Accommodations

Index

asonable Accommodation and Undue Hardship Under the Americans with Disabilities Age...

Case 1:04-cv-12186-JGD    Document 1    Filed 10/12/2004    Page 22 of 40

specific accommodation. Undue hardship refers not only to financial difficulty, but to reasonable accommodations that are unduly extensive, substantial, or disruptive, or those that would fundamentally alter the nature or operation of the business.[15] An employer must assess on a case-by-case basis whether a particular reasonable accommodation would cause undue hardship. The ADA's "undue hardship" standard is different from that applied by courts under Title VII of the Civil Rights Act of 1964 for religious accommodation.[16]

# REQUESTING REASONABLE ACCOMMODATION

1.  **How must an individual** request a reasonable accommodation?

    When an individual decides to request accommodation, the individual or his/her representative must let the employer know that s/he needs an adjustment or change at work for a reason related to a medical condition. To request accommodation, an individual may use "plain English" and need not mention the ADA or use the phrase "reasonable accommodation."[17]

    > Example A: An employee tells her supervisor, "I'm having trouble getting to work at my scheduled starting time because of medical treatments I'm undergoing." This is a request for a reasonable accommodation.

    > Example B: An employee tells his supervisor, "I need six weeks off to get treatment for a back problem." This is a request for a reasonable accommodation.

    > Example C: A new employee, who uses a wheelchair, informs the employer that her wheelchair cannot fit under the desk in her office. This is a request for reasonable accommodation.

    > Example D: An employee tells his supervisor that he would like a new chair because his present one is uncomfortable. Although this is a request for a change at work, his statement is insufficient to put the employer on notice that he is requesting reasonable accommodation. He does not link his need for the new chair with a medical condition.

    While an individual with a disability may request a change due to a medical condition, **this request does not necessarily mean that the employer is required to provide the change. A request for reasonable accommodation is the first step** in an informal, interactive process between the individual and the employer. In some instances, before addressing the merits of the accommodation request, the employer needs to determine if the individual's medical condition meets the ADA definition of "disability,"[18] a prerequisite for the individual to be entitled to a reasonable accommodation.

2.  May someone **other than the individual with a disability request a reasonable accommodation** on behalf of the individual?

    Yes, a family member, friend, health professional, or other representative may request a

reasonable accommodation on behalf of an individual with a disability.[19] Of course, the individual with a disability may refuse to accept an accommodation that is not needed.

> Example A: An employee's spouse phones the employee's supervisor on Monday morning to inform her that the employee had a medical emergency due to multiple sclerosis, needed to be hospitalized, and thus requires time off. This discussion constitutes a request for reasonable accommodation.

> Example B: An employee has been out of work for six months with a workers' compensation injury. The employee's doctor sends the employer a letter, stating that the employee is released to return to work, but with certain work restrictions. (Alternatively, the letter may state that the employee is released to return to a light duty position.) The letter constitutes a request for reasonable accommodation.

3. Do requests for reasonable accommodation need to be **in writing**?

No. Requests for reasonable accommodation do not need to be in writing. Individuals may request accommodations in conversation or may use any other mode of communication. [20] An employer may choose to write a memorandum or letter confirming the individual's request. Alternatively, an employer may ask the individual to fill out a form or submit the request in written form, but the employer cannot ignore the initial request. An employer also may request reasonable documentation that the individual has an ADA disability and needs a reasonable accommodation. (See Question 6).

4. When should an individual with a disability **request a reasonable accommodation**?

An individual with a disability may request a reasonable accommodation at any time during the application process or during the period of employment. The ADA does not preclude an employee with a disability from requesting a reasonable accommodation because s/he did not ask for one when applying for a job or after receiving a job offer. Rather, an individual with a disability should request a reasonable accommodation when s/he knows that there is a workplace barrier that is preventing him/her, due to a disability, from effectively competing for a position, performing a job, or gaining equal access to a benefit of employment.[21] As a practical matter, it may be in an employee's interest to request a reasonable accommodation before performance suffers or conduct problems occur.

5. What must an employer do **after receiving a request for reasonable accommodation**?

The employer and the individual with a disability should **engage in an informal process** to clarify what the individual needs and identify the appropriate reasonable accommodation.[22] The employer may ask the individual relevant questions that will enable it to make an informed decision about the request. This includes asking what type of reasonable accommodation is needed.

The exact nature of the dialogue will vary. In many instances, both the disability and the type of accommodation required will be obvious, and thus there may be little or no need to

engage in any discussion. In other situations, the employer may need to ask questions concerning the nature of the disability and the individual's functional limitations in order to identify an effective accommodation. While the individual with a disability does not have to be able to specify the precise accommodation, s/he does need to describe the problems posed by the workplace barrier. Additionally, suggestions from the individual with a disability may assist the employer in determining the type of reasonable accommodation to provide. Where the individual or the employer are not familiar with possible accommodations, there are extensive public and private resources to help the employer identify reasonable accommodations once the specific limitations and workplace barriers have been ascertained.[(23)]

6. May an employer ask an individual for **documentation** when the individual requests reasonable accommodation?

Yes. When the **disability and/or the need for accommodation is not obvious**, the employer may ask the individual for **reasonable documentation** about his/her disability and functional limitations.[(24)] The employer is entitled to know that the individual has a covered disability for which s/he needs a reasonable accommodation.

**Reasonable documentation** means that the employer may require only the documentation that is needed to establish that a person has an ADA disability, and that the disability necessitates a reasonable accommodation. Thus, an employer, in response to a request for reasonable accommodation, cannot ask for documentation that is unrelated to determining the existence of a disability and the necessity for an accommodation. This means that in most situations an employer cannot request a person's complete medical records because they are likely to contain information unrelated to the disability at issue and the need for accommodation. If an individual has more than one disability, an employer can request information pertaining only to the disability that requires a reasonable accommodation.

An employer may require that the documentation about the disability and the functional limitations come from an appropriate health care or rehabilitation professional. The appropriate professional in any particular situation will depend on the disability and the type of functional limitation it imposes. Appropriate professionals include, but are not limited to, doctors (including psychiatrists), psychologists, nurses, physical therapists, occupational therapists, speech therapists, vocational rehabilitation specialists, and licensed mental health professionals.

In requesting documentation, employers should specify what types of information they are seeking regarding the disability, its functional limitations, and the need for reasonable accommodation. The individual can be asked to sign a limited release allowing the employer to submit a list of specific questions to the health care or vocational professional. [(25)]

As an alternative to requesting documentation, an employer may simply discuss with the person the nature of his/her disability and functional limitations. It would be useful for the employer to make clear to the individual why it is requesting information, i.e., to verify the existence of an ADA disability and the need for a reasonable accommodation.

Example A: An employee says to an employer, "I'm having trouble reaching

*This has No Date*

TO:   Case File: Devine, Christopher v. Stop & Shop
      01-13-1476
      EEOC#: 16CA11792
      # of Employees: 25+

FROM: Jeannine Rice

RE:    RECOMMENDATION for DISMISSAL of COMPLAINT

*Replied Back get copy of reply of Appeals with of Response to the letter*

**Issue(s) Investigated:**

Whether the Complainant was discriminated against when he was constructively discharged after he was subjected to disparate terms and conditions and hostile work environment by his employer because of his Disability (AIDS) in violation M.G.L. Chapter 11B, §4, ¶16 and the ADA.

**Summary of Findings:**

Complainant worked for the Respondent initially as a part time cashier and then as a part time bakery clerk The record indicates his tenure with the company was replete with performance problems including insubordination, poor attendance and disruptive behavior in front of customers. He received numerous warnings and was suspended. In June 2000 the Complainant informed Fatima Cabral, the department lead clerk, that he had been diagnosed as HIV positive. Ms. Cabral has told the Commission that on many occasions she provided assistance to the Complainant with respect to personal and employment issues. In fact, she considered herself to be of tremendous support to the Complainant. Even though it appears that the Complainant's immediate coworkers tried "covering" for him, store management, which was not aware of the Complainant's health status, noticed the Complainant's work performance continued to deteriorate. Investigation reveals Ms. Cabral urged the Complainant to notify store management of his illness in order to request a reasonable accommodation but he did not do so. The Complainant, unjustifiably, characterizes Ms. Cabral's concern as harassment. The record clearly does not support Complainant's representations. In fact, on one occasion, the Complainant appeared at the store-bloodied, bruised and otherwise disheveled. Ms. Cabral took the Complainant to the store, fed him and assisted him with locating shelter for the evening. *) To be nosy and get Information out of me. concerns*

In December 2000 the Complainant was verbally reprimanded by an assistant store manger for working without punching in on the time clock. Complainant complained to the union where after the union found the store had properly handled the matter. The record indicates the Complainant tendered his resignation immediately and told the Respondent he would work for two additional weeks. However, the record indicates the Complainant never again appeared for work and Respondent never heard from the Complainant until he filed this complaint nearly six months hence.

The Respondent has articulated a nondiscriminatory appropriate business reason for disciplining the Complainant in view of his conduct. Nothing in the record indicates Respondent was aware of Complainant's disability. Though his lead clerk (not supervisor) had provided the Complainant with personal assistance, Complainant has

stressful situation.  It is recommended this complaint be dismissed due to a lack of probable cause.

Jeannine K. Rice, Investigator

Jean A. Clanton
Supervisor

*Replied Back*
*get copy of*
*Response/Appeal's Letter*
*of Response*
*to this*
*Letter*
*At*
*mead*

*[handwritten notes in left margin: "This is know Poorly Put must be with in 30 days Incorrect"]*

*[handwritten notes in right margin top: "No Date on this Paper"]*

**MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION**
**ONE ASHBURTON PLACE, ROOM 601 BOSTON, MA 02108**
**(617) 727-3990**

-DISMISSAL and NOTIFICATION of RIGHTS-

| | |
|---|---|
| To:    Christopher Devine<br>6 Morgan Road<br>Boston, MA 02126 | Case: Devine v. Stop & Shop<br>Docket #: 01-13-1476<br>EEOC No: 16CA11792<br>Investigator: Jeannine Rice |

Your complaint is dismissed for the following reason(s):

[ ]    The facts you allege fail to state a claim under any of the statutes the Commission enforces.

[ ]    Respondent employs less than the required number of employees.

[ ]    Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ]    You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conference, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint. You have had more than 30 days in which to respond to our written request.

[ ]    The Commission's efforts to locate you have been unsuccessful. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ]    The Respondent has made a reasonable settlement, offering full relief for the harm you alleged. 30 days have expired since you received actual notice of this settlement offer.

[X]    The Commission issues the following determination. Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

[ ]    Other:

-NOTICE OF APPEAL-

If you wish to appeal the dismissal of your complaint and believe that the above stated reason for dismissal is incorrect, you may appeal to this commission within 10 days after receipt of this notice. Your appeal of the dismissal must be made in writing by you or your attorney to the appeals clerk of this Commission. (Attention: Ms. Nancy To).

All employment complaints, where applicable, were filed by the MCAD with the Equal Employment Opportunity Commission. Our finding, which will be forwarded to its area office, One Congress Street Boston, MA will be given substantial weight provided that such findings are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the ADEA, and/or the ADA as amended.

*[signature]*                                    Date: 3/7/03

_____
Investigating Commissioner

Robert Waterman                 Jon Argenziano
Stop & Shop                     JRI Health Law Institute
P.O.Box 1942                    100 Boylston Street, Suite 815
Boston, MA 02105                Boston, MA 02116

*[handwritten notes in right margin: "Replied Back get copy of Reply of Appeals letter of Respons to this letter"]*

*Served up*
*Sept 25, 03*
*federal case*

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Room 601, Boston, MA 02108
Tel (617) 994-6000
Fax (617) 994-6024

September 10, 2003

Christopher Devine
P.O. Box 185
Mansfield, MA 02048-0185

        RE:  Christopher Devine v. Stop & Shop
              MCAD Docket No 01131476

Dear Parties:

You are hereby notified the Commission has received your appeal in the above
referenced matter.  A preliminary hearing has been scheduled for September 25, 2003 at
2:30 p.m., in the Boston Office.

Please bring any additional information you wish to present to the Commission in support
of your appeal.

If Complainant is unable to attend, a written appeal may be submitted. If the Respondent
is unable to attend, no continuance will be granted.

                              Very truly yours,

                              Nancy M. To
                              Appeals Progress Coordinator

cc: Robert Waterman
    Stop & Shop
    P.O. Box 1942
    Boston, MA 02105

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Room 601, Boston, MA 02108

NOV 2 0 2003

Christopher Devine
P.O. Box 185
Mansfield, MA 02048-0185

RE:  Christopher Devine v. Stop & Shop
MCAD DOCKET NO: 01131476

Dear Parties:

On September 25, 2003 a preliminary hearing was held regarding the above reference complaint to consider the Complainant's appeal of lack of probable cause finding issued in this Complaint on March 20, 2003.

Based upon information presented at the appeal hearing and a review of the evidence adduced in investigation, I have determined that the Lack of Probable Cause finding in this case is affirmed. This means that investigation and appeal evidence fails to establish sufficient evidence to determine that an unlawful act of discrimination has been committed.

All employment complaints where applicable, are dual filed with the U.S. Equal Employment Opportunity Commission (EEOC).  Our finding will be forwarded to its Area Office, JFK Federal Building, Boston, MA 02203. The MCAD finding will be given substantial weight by the EEOC provided that such finding are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and or The Americans with disabilities Act of 1990.

Very truly yours,

Walter J. Sullivan, Jr.
Investigating Commissioner

cc: Robert Waterman
    Stop & Shop
    P.O. Box 1942
    Boston, MA 02105

*Bond Lady*    *Geraldine Fashadt closed out Preliminary Hearing Case*

*No notification of complaint to file in court A*
*The court will take into consideration this complaint*

1. CHRISTOPHER WAS NOT REPRIMANDED FOR 6 MONTHS
        OR DISAPLINED FOUR ANYTHING,DO TO CHANGE OF MANAGEMENT.
Kim Catterelli was on fraternity leave, because she was having a baby. Then she was
replaced by Heather Furngis during the six months being there. Months of 4/00 through
10/00.

Fact.
        Personnel File proves this.
  Fact
        Was never informed about other CIRTAIN reprimands
        IF CHRISTOPHER KNEW ABOUT REPRIMANDS HE WOULD HAVE
        FOLLOEWED grievance procedure with union.
        HAVE FOLLOWED PROCEDURES WITH OTHER REPRIMANDS.
        Retaliation begins, reprimand and disciplinary actions were continuously
        confronted.

        FACT
                FATIMA KNEW I HAD HIV
                FATIMA RIPS UP DOCTOR NOTE

        FATIMA HAS NEVER REPRIMANDED ME AS BEING THE MANAGER IN
        THE BAKESHOP. CHRISTOPHER HAS ONLY
        BEEN VIRBALLY HARRASSED AND NOT ACCOMIDED.


        Heather furgis never reprimanded me, she was the night manger and on
        weekends. Heather was transferred.

        Looked at personnel file on Dec 2/00. New manager Evet assisted me to look at
        my file. Evet was a night manager.

        Friend in Bake shop was a Homosexual named Alan Bruno who was a night
        person in the Bake shop. Mr. Bruno was transferred to Rhode Iland with Heather
        furngis.

        Other information On time cards, Grievances, registers,  and other proceedings on
        in union contract.

MCAD
CASE Christopher Devine Vs Stop and shop
Facts and causes
Why was Christopher Devine Discriminated?

During the time of my employment with stop and shop I have had HIV since the start of working there. My positions were bakeshop and a cashier clerk. I would like to address the facts and the causes of discrimination.

Fact
Had mono type symdoms and brought in doctor's note explaining the reasons why I was out sick. During this time I did not know that I had HIV. This was the months of May and June of 2000. I did have HIV during these symdoms.
Cause

Out of month of June 2000 returned in July of 2000

Fact
Found out about HIV symdoms worked for 10 hours during the first week I returned

Cause was

Went to go get my check, my check was not there I was lock out of the computer to punch in, my Seniority changed one dollar and something sense short out of my check .I was asked to refill out paperwork witch I refused. They wanted to rehire me. I was given a new time card to punch in. They reentered me into the computer. The payroll clerk took me out while I was out sick for a month.
Subject of harassment and aggravation
The payroll clerk named Bridget ambushed me and embarrassed me in front of employees and consumers After I asked more than once where my check was, she replied I don't know where your stupid check is, putting all blame on me saying that I never punch in. While during this time I said but someone locked me out of the computer. She then went up to Bob Slarves office. Mr. Slarve then ambushed me my yelling at me after coming down from the service deck telling me to go to his office. He yelled at me and said who do you think you are. I ran out of the office in tears emotionally upset and saw Fatima. She asked what was wrong. Then Bob Slarve called me a fag and told me to leave the store in front of Fatima.
I called the union and later union called store, later went back and got employee loan. The only nice person that was ever a manger that helped me was Heather Furngis. Heather was a night and weekend manager for six months at stop and shop. Then she transferred to the Putucket store in Rhode Iland.

Sept of 2000

Found out Chris had HIV
Facts

1 Chris told Fatima the bake shop manager that he had HIV
2 Chris was asked by Fatima on more then one accession to tell the store manager Rob Slarve.
3 Chris brought doctors note that Fatima requested

Cause

1 Fatima ripped up doctors that she wanted from Chris
2 Chris' accommodation was denied for less strenuous work
For his illness of ~~~~ and symdoms HIV
3 Chris's accommodation was denied for 4 months and was the
Subject of harassment through other mangers.

Invasion of privacy was broken under the constitution of the United States.

Harassment
 Around November

Fact

Chris was written up and locked out of the computer on more than on accation

Cause
Chris was sick  and going though withdrawals while his accommodation was denied for four months
through
Sept to Dec. 2000
Chris was sick through medicine.

I was the subject of harassment from Dianne Paris

 Fact
Chris requested union meeting

2. Chris wanted discipline records removed from his file

Cause

Nothing got resolved

Chris was still the subject of harassment
By management and  by Rob Slarve.
Bob Slarve never rescheduled Union meeting

Fact

Chris was harassed in bakeshop
 By Rob Slarve
Fact
Chris had symdoms of diarrhea for 4 months

Fact
Chris was left to clean up panout and to finish other full timers work.

Cause Chris was sick had to go home attempt to finish his work Chris gave two weeks and went to the last
day

MCAD
Christopher Devine Vs Stop and shop
My written Defense
Page two

Fact
Christopher did tell bakeshop manager that he had HIV
Fact
Fatima knew that my performance deteriorated and that my illness was getting worse
Why was I not accommodated?
What treatments do to his illness was Christopher receiving?
Fact
Christopher did leave work early and often failed to complete assigned tasks.
Again, Why was Christopher not accommodated?

Fact
Christopher did do his best to complete his work.
Again, Christopher was not accommodated.

Fact
Not only did the department hold responsible for poor work performance.
Again Christopher was not accommodated.

Fact
Christopher was reprimanded and was disciplined, locked out of work, asked for union representation that was never received, Was verbally harassed by manager Dianne Paris for not completing my job performance. This happened after telling Dianne I had HIV.
Again this is not an accommodation.

Fact
Christopher requested union meeting with Store manger Bob Slarve, Dianne Paris, union representative Ronald Rivet (who is no longer at local 328) and Christopher Devine.
Union did not completely investigate, do to a rescheduled meeting that was requested by Christopher and the store manager.
Fact 2
This rescheduled meeting was to be taken place, because Fatima Cabral would have defended herself since her name was mentioned in the meeting with the rest of the party. Rob slarve insisted on having Fatima there because Christopher was reprimanded on being late twice. Both by Rob Slarve and Dianne Paris. The cause of Christopher being late was of the fact the Christopher have a learning disability and I was coming from school and Christopher Informed Fatima of that fact and my union stated that fact to Rob Slarve.
The rescheduled meeting never took place with Fatima Cobral because Rob Slarve was going on vacation for a week. Do to my outstanding truth Fatima told me she wanted no part of this second meeting. She quoted this statement to me while Rob Slarve was on vacation. Rob Slarve was to reschedule this meeting when he returned on vacation and failed to do so. In the mean time after Rob Slarve came back Christopher ask him when he would reschedule the second union meeting he replied soon. Since Christopher and the Union Representative was waiting for a response that never got addressed Christopher gave his to weeks.

**RETALIATION**
CHRISTOPER WAS WRITTEN UP MORE THAN ONCE. AND NOT INFORMED OF MY
REPRIMAND BEFORE MY UNION MEETING WAS SCHEDULED. THEREFORE, MY IMPOYER
WAS ANGRY AND WANTED TO MAKE ME LOOK BAD INFRONT OF MY REPRISENATIVE
MAKING ME LOOK LIKE I HAD A BEHAVIOR PROBLEM AND BECAUSE I HAD A LEARNING
DISABILITY. THE SUBJECT MATTER OF MY LEARNING DISABILITY WAS CONFRONTED TO
ROB SLARVE THAT I CAME FROM SCHOOL.
DISAPLINING ME INFRONT OF MY UNION REP. WAS UNPROFESSIONAL.
ALSO JUST TO INFORM YOU THAT DIANNE PARIS LIED TO MY UNION REP. AND SAID " Chris
was over in the magazine section when we was suppose to be in the bake shop" DURING THAT TIME I
WAS TAKING MY 15 MINUTE BREAK.
Fact
Even while Christopher gave his two week notice, Christopher even in his two weeks showed up for work.
Christopher's time cards show that he was there and that he put in his full effort with stop and shop with
out accommodated him even when he ask for an accommodation (BUt STill Needed one

    Please be aware of these facts and statements.
    During this time Christopher had extreme diarrhea, was
    Under weight, had sweats and rash would let him to leave?
    Before Christopher would leave his shift, he did inform
    Management before his dismissal.


Fact

Christopher was left unsupervised and was left with other full timers work and cleanup as well as his job
duties.
Fatima Cobral set and posts the two-week schedule so that Christopher would not have a full time
employee on with him during his shifts which let Christopher with out any help during his Illness.
Time cards of other employee and Fatima's schedule for the two-weeks that was posted during that time
would support this argument.


    Fact

    Chris was out sick the month of June 2000
    Chris brought in doctor's note from regular MD
    Chris was having HIV symdoms
    Chris Informed Fatima about HIV in September of 2000
    Chris brought in doctor's note to Fatima the next scheduled shift
    The date of the doctor's note was the 14 of September
    Chris did request accommodation brought to Fatima's attention
    Assistance from Management and full timers was never accommodated.
    Encouragement from Fatima broke constitutional right to privacy under
    the united states constitution. Would let to written reprimand and verbal
    Harassment for failure to complete tasks.
    **Retaliation occurred.**
    Fact — Benifits were Coming
To commission can forward this complaint.
This evidence and the investigator will help Christopher find an ending to this complaint
 Stop and shop should not preach that Christopher does or doesn't have evidence to support his
claim.

X Christopher Davis

# POLICIES AND PROCEDURES ACKNOWLEDGEMENT FORM

This page must be signed and returned to Personnel Administration, QCP-3 with Orientation Package Administration forms.

Please sign below if you have been instructed on and fully understand the following policies and procedures found in the Orientation Package:

- Equal Employment Opportunity Policy
- Workplace Policy
- Parcel Check & Inspection Policy
- Closed Circuit Television Policy
- Price Accuracy Guarantee
- Tobacco Sales Policy
- Alcohol/Beer Sales Policy
- Unacceptable Associate Conduct Policy
- Anti-Harassment and Sexual Harassment Policy
- Time Card Policy
- Payroll Procedures Policy
- Associate Purchase Policy
- Environmental Policy
- Dress Code Policy
- Personal Hygiene Policy
- Personal Protective Equipment Policy
- Bloodborne Pathogen Policy
- Sampling Policy
- Hazard Communication Policy

_____          _____
New Associate Signature                                  Date

The information contained herein has been reviewed with the new associate.

_____          _____
Department Head Signature                               Date

_____          _____
Store Manager Signature                                   Date

(White Copy-Send to Personnel Administration, QCP-3. Yellow Copy-Store)

# BENEFITS

Along with your wages, Stop & Shop has a comprehensive benefits package. Details and eligibility vary according to your store's location, your length of service and your work schedule. When you are eligible, the specifics will be provided by your Store Manager.

All full-time associates are entitled to an unpaid meal period of at least 1/2 hour, but no more than 1 hour. In addition, paid rest periods are granted. Generally a full-timer will receive two 15 minute rest periods during the day and a part-timer one 15 minute rest period. Rest periods are given by Department Managers.

*The following benefits are fully paid by Stop & Shop:*



- Health and Welfare benefits
- Pension Plan
- Sick Leave
- Vacation
- Holidays and Personal Days

## Scholarships
Stop & Shop sponsors four scholarships each year. They are available to high school seniors who are either associates or children of associates of the Stop & Shop Companies, Inc. Each scholarship pays $4,000 over a four year period ($1,000 per year). Details regarding eligibility and applications are published each fall.

## Career Day
Each April, The Stop & Shop Supermarket Company holds a Career Day. This day serves as an introduction to our Management Trainee Program (Night Managers, General Merchandising Managers, and Video Managers). Many associates have been promoted into Management Training positions as a result of our Career Day Program.

## Tuition Reimbursement Program
Stop & Shop Supermarket Company will reimburse 75% of tuition cost after successful completion of a course with a grade of "C" or better (a maximum of two courses per semester, six per year) for all full-time associates who are taking courses towards a degree. Your Store Manager will provide you with details and eligibility requirements.

## Cornell Home Study Program
The Cornell Home Study Program offers correspondence courses in food industry management for full-time associates. Ask your Store Manager for details and eligibility requirements.

## The Stop & Shop Recognition Program
At Stop & Shop we want to recognize those associates who provide Legendary Service to our customers.

The Stop & Shop Recognition Program combines on-the-spot recognition with long-term recognition.

# THE STOP & SHOP SUPERMARKET COMPANY

## EQUAL EMPLOYMENT OPPORTUNITY
## POLICY

It is Stop & Shop's policy to provide equal employment opportunity to all individuals. In accordance with this policy, decisions regarding employment and advancement at Stop & Shop are based on merit. Stop & Shop strictly prohibits discrimination of any individual based on race, color, religion, gender, national origin, age, veteran status, genetic information, sexual orientation, legally recognized physical or mental disabilities, or any other characteristic protected by law.

This policy applies to all aspects of employment, including selection, hiring, compensation, promotion, job assignment, discipline, discharge, access to benefits and training, and any other terms or conditions of employment.

Further, it is Stop & Shop's policy to provide an environment that is free of unlawful harassment of any kind. Unwelcome conduct that is based on any characteristic protected by law is strictly prohibited. Furthermore, retaliation against any individual who complains of discrimination or harassment or any individual who participates in an investigation of such a complaint is strictly prohibited.

In addition, Stop & Shop will make reasonable accommodations, as required by law, for qualified individuals with known legally recognized disabilities and for associates' practices related to sincerely held religious beliefs, unless doing so would result in an undue hardship to the business.

Stop & Shop's EEO and Anti-harassment Policies apply to all employees, as well as to any other person doing business with or for Stop & Shop. All officers, managers, and supervisors of Stop & Shop will cooperate in implementing these policies. Anyone found to be engaging in any type of unlawful discrimination, harassment, or retaliation will be subject to disciplinary action, up to and including termination of employment.



*The Stop & Shop Supermarket Company*
# ANTI-HARASSMENT POLICY

## I. Introduction

Stop & Shop is committed to providing a workplace free of unlawful harassment of any kind by anyone, including associates, vendors, and customers. Stop & Shop does not tolerate harassing conduct that affects employment conditions, interferes unreasonably with an individual's work performance, or creates an intimidating, hostile, or offensive work environment. For purposes of this policy, "workplace" includes company-sponsored social events, work-related travel, or other events connected with employment. The Company takes allegations of harassment seriously and promptly responds to complaints. Stop & Shop does not tolerate any retaliation against an individual who has complained about harassment or who has cooperated with an investigation of a harassment complaint.

## II. Definition of Harassment

"Harassment" means unwelcome conduct, verbal or physical, that is based on a characteristic protected by law, such as sex, race, color, ancestry, national origin, religion, age, disability, marital status, genetic information, or sexual orientation. Such conduct may include, but is not limited to:

- Verbal abuse or insults about, directed at, or made in the presence of an individual or group described above.
- Display or circulation of written materials or pictures that are degrading to a person or group described above.

"Sexual harassment" means sexual advances, requests for sexual favors, or verbal or physical conduct of a sexual nature when:

- Submission to or rejection of such advances, requests, or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions.
- Such advances, requests, or conduct have the purpose or effect of interfering with an individual's work performance by creating an intimidating, hostile, humiliating, or sexually offensive work environment.

Direct or implied requests by a supervisor for sexual favors in exchange for actual or promised job benefits such as favorable reviews, salary increases, promotions, increased benefits, or continued employment would constitute sexual harassment. In addition, other unwelcome sexually oriented conduct, whether intended or not, that has the effect of creating a work environment that is hostile, offensive, intimidating, or humiliating to either male or female workers may constitute sexual harassment.

While it is not possible to list all behaviors that may be considered sexual harassment, the following are examples of conduct that may constitute sexual harassment. In each case, such a determination will depend upon the totality of the circumstances, including the severity of the conduct and its pervasiveness.

- Unwelcome sexual advances, whether or not they involve physical touching.
- Unwelcome leering, whistling, brushing against another's body, sexual gestures, suggestive or insulting comments.
- Sexual epithets, jokes, comments about an individual's body, an individual's sexual activity, deficiencies, or prowess, or other sexual conduct.
- Discussing one's own sexual activities or inquiring into others' sexual experiences.
- Displaying or distributing sexually suggestive objects, pictures, cartoons, or written materials with sexual content by any means, including e-mail.

## III. Reporting Complaints of Harassment

Anyone who believes that he or she has been subjected to any type of harassment is encouraged to report his or her concerns to Stop & Shop. This may be done verbally or in writing. You may contact any Human Resources or Associate Relations representative or your Store or District Manager, Facility Manager, or

-OVER-

# THE STOP & SHOP SUPERMARKET COMPANY

## EQUAL EMPLOYMENT OPPORTUNITY
## POLICY

It is Stop & Shop's policy to provide equal employment opportunity to all individuals. In accordance with this policy, decisions regarding employment and advancement at Stop & Shop are based on merit. Stop & Shop strictly prohibits discrimination of any individual based on race, color, religion, gender, national origin, age, veteran status, genetic information, sexual orientation, legally recognized physical or mental disabilities, or any other characteristic protected by law.

This policy applies to all aspects of employment, including selection, hiring, compensation, promotion, job assignment, discipline, discharge, access to benefits and training, and any other terms or conditions of employment.

Further, it is Stop & Shop's policy to provide an environment that is free of unlawful harassment of any kind. Unwelcome conduct that is based on any characteristic protected by law is strictly prohibited. Furthermore, retaliation against any individual who complains of discrimination or harassment or any individual who participates in an investigation of such a complaint is strictly prohibited.

In addition, Stop & Shop will make reasonable accommodations, as required by law, for qualified individuals with known legally recognized disabilities and for associates' practices related to sincerely held religious beliefs, unless doing so would result in an undue hardship to the business.

Stop & Shop's EEO and Anti-harassment Policies apply to all employees, as well as to any other person doing business with or for Stop & Shop. All officers, managers, and supervisors of Stop & Shop will cooperate in implementing these policies. Anyone found to be engaging in any type of unlawful discrimination, harassment, or retaliation will be subject to disciplinary action, up to and including termination of employment.

Department Manager.  Or, you may report your concerns to any of the following persons, who are available to provide information about this policy and about the process of handling complaints:

| Contact | Phone Number | Address |
|---|---|---|
| Robert Waterman, EEO Manager | (617) 770-8154 | 1385 Hancock Street, Quincy, MA 02169 |
| Kathy Kenney, Director of Recruitment & Associate Relations | (617) 770-6941 | 1385 Hancock Street, Quincy, MA 02169 |
| Sam Cron, Director of Associate Relations – Boston Division | (617) 770-8752 | 1385 Hancock Street, Quincy, MA 02169 |
| Ken Burroughs, Director of Associate Relations – Connecticut Division | (203) 654-8441 | 153 Washington Avenue, North Haven, CT 06473 |
| Kathy Russello, Director of Associate Relations – New York Metro Division | (732) 661-3607 | One Raritan Plaza, 110 Fieldcrest Avenue, Edison, NJ 08837 |
| Bill Brennan, Manager of Human Resources – Non Retail | (617) 360-6643 | 100 Meadow Road, Readville, MA 02137 |

Alternatively, you may report your concerns to the Stop & Shop Tip Line by calling:  1-800-225-8220.

**IV. Complaint Investigation**

If Stop & Shop receives a complaint of harassment, the matter will be investigated in a fair and expeditious manner.  The investigation will be conducted in such a way as to maintain confidentiality to the extent practicable under the circumstances.  The investigation may include interviewing the person filing the complaint, the person alleged to have engaged in harassment, and any witnesses or other individuals who may be useful to the investigation.  At the conclusion, the person who made the complaint and the person alleged to have committed the conduct will be informed of the results of the investigation, as appropriate.

**V. Disciplinary Action**

If it is determined that inappropriate conduct has occurred, Stop & Shop will act promptly to eliminate the conduct and will impose corrective action as appropriate under the circumstances.  Action may range from counseling to disciplinary action, up to and including termination of employment.

**VI. State and Federal Remedies**

In addition to the above, an individual may file a complaint with the respective state agency and/or with the Equal Employment Opportunity Commission.  Using Stop & Shop's complaint process does not prohibit you from filing a complaint with these agencies.  Each agency has a specific time period for filing a claim (EEOC, Connecticut Commission on Human Rights and Opportunities, New Jersey Division on Civil Rights - 180 days; Massachusetts Commission Against Discrimination - six months; Rhode Island Commission for Human Rights, New York State Division of Human Rights - one year).

| 1. United States Equal Employment Opportunity Commission (EEOC) | 2. Connecticut Commission on Human Rights and Opportunities | 3. Massachusetts Commission Against Discrimination |
|---|---|---|
| 1801 L Street, NW Washington, DC  20507 1-800-669-4000 TDD 1-800-800-3302 | 1229 Albany Avenue Hartford, CT  06112 (860) 566-7710 TDD (860) 541-3459 | One Ashburton Place Suite 601 Boston, MA 02108 (617) 727-3990 |
| 4. New Jersey Division on Civil Rights | 5. New York State Division of Human Rights | 6. Rhode Island Commission for Human Rights |
| 140 East Front Street P.O. Box 090 Trenton, NJ 08625 (609) 292-4605 TDD (609) 292-1785 | One Fordham Plaza, 4th Floor Bronx, NY 10458 (718) 741-8400 TDD (718) 741-8304 | 10 Abbott Park Place Providence, RI 02903 (401) 222-2661 TDD (401) 222-2664 |