UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER M. DEVINE ) | |
| Plaintiff ) | C. A. No. 04-12186-JGD |
| ) | |
| v. ) | |
| ) | |
| STOP AND SHOP COMPANIES, ) | |
| Defendant ) | |
| ) | |

### DEFENDANT'S PRE-TRIAL MEMORANDUM

Pursuant to the Court's Order, dated March 7, 2007, the Defendant, The Stop & Shop Supermarket Company LLC ("Stop & Shop," "Defendant" or the "Company"), respectfully submits this Pre-Trial Memorandum in the above-referenced action.

### I.   BRIEF DESCRIPTION OF THE FACTS

#### A.   Liability

The Plaintiff, Christopher Devine ("Plaintiff" or "Devine"), worked for Stop & Shop on a part-time basis in its Mansfield, Massachusetts store from approximately February 6, 2000 until his resignation, effective December 9, 2000. Devine first worked as a part-time cashier and, subsequently, as a part-time bake shop clerk in the Mansfield store. According to Devine, he usually worked about 20 to 25 hours per week at an hourly wage rate of $7.20 per hour.

Before Devine was diagnosed as HIV positive, he experienced a number of job performance issues, including insubordination, disruptive behavior in front of customers, mistreatment of coworkers, failure to meet job standards, and poor attendance (absenteeism and tardiness). Plaintiff was given numerous warnings and, on April 6, 2000, he was suspended for allowing a customer whose order came to $122.89 to leave without paying. Devine grieved his suspension through his union and was reinstated.

In June 2000, Devine's mother reported that he was hospitalized with a strep infection. He was out of work for several weeks. Devine was diagnosed as HIV positive in approximately August 2000. Sometime thereafter, Devine told Fatima Cabral, the Bake Shop's lead clerk, and two other co-workers that he had been diagnosed as HIV positive.

Plaintiff's job performance continued to deteriorate. Devine frequently left work early and often failed to complete assigned tasks. Cabral and Devine's co-workers did their best to assist Devine in completing his work assignments and the department seldom held Devine accountable for his poor work performance. Meanwhile, store management was holding the department accountable for maintaining standards, and department staff did their best to cover for Devine, who wanted to keep his condition confidential. Due to the efforts of Cabral and Devine's other co-workers, management did not learn of Devine's performance issues.

In November 2000, Devine received two written counselings from Diana Paris, the Perishables Manager. Devine complained to his union about these counselings. The union investigated and found that the store had handled the matter appropriately. Devine then informed the Company that he was resigning, and he gave two weeks notice. Without calling the store, Devine did not appear for his next scheduled shift, and the store did not hear from him again. To the extent that Diana Paris learned of Devine's HIV status at some point in time, she had no knowledge that it affected his job performance or ability to finish tasks. Accordingly, neither Diana Paris nor any member of Stop & Shop management was on notice that Devine had a need for accommodation for a disability.

Devine never requested, explicitly or implicitly, any reasonable accommodation. The only doctor's note Stop & Shop management ever received from Devine was at the time of his June 2000 hospitalization for the strep infection. Devine never notified any member of Stop &

Shop management of his purported need for accommodation. Moreover, while Plaintiff claims that he notified Cabral, the Bake Shop's lead clerk, of his condition in or around the Summer of 2000, Cabral undisputedly was not a member of management. Devine incorrectly presumes that Cabral was a member of management. On the contrary, as a lead clerk in the Bake Shop, Cabral was a member of Devine's union (*i.e.*, non-management). Indeed, Cabral encouraged Devine to speak to the Store Manager about his situation when his job performance deteriorated, but Devine declined to do so because he wanted to keep it confidential. Devine also asked Cabral to keep his condition confidential. Likewise, prior to resigning, Devine never notified his union representatives of his condition or purported need for accommodation, nor did he ever ask the union for assistance in obtaining an accommodation.

In sum, Devine never notified Stop & Shop of his need for accommodation. Stop & Shop, therefore, did not fail to accommodate Devine. To the contrary, Devine's co-workers extended themselves to assist the Plaintiff as best they could, while keeping his condition confidential pursuant to his wishes.

B. **Damages**

During his deposition in May 2006, Devine conceded that his damages did not really approach 40 million dollars. Devine testified that his damages were primarily based on emotional distress damages, and he testified that the duration of his emotional distress was limited to the period from the Fall of 2000 to August 2001, when he obtained a new job (*i.e.*, about eight months of emotional distress).

Plaintiff's potential back pay damages are likewise limited because he was a part-time employee for Stop & Shop and obtained new employment in August 2001, approximately eight months after his resignation. According to Devine's figures, he typically earned between $144

and $180 per week at Stop & Shop. According to Devine's 2000 W-2 information, his total wages from Stop & Shop amounted to $7,678.74. Accordingly, at best, his potential back pay damages would approximate between $5,000 and $6,240 for the eight-month period before he obtained subsequent employment and mitigated his damages.

## II.     DISPUTED ISSUES OF LAW

Defendant does not believe that there are any disputed issues of law between the parties. Defendant will submit the controlling case law in its post-trial brief. Defendant also does not anticipate the need for any motions in limine at this time.

## III.    EXHIBITS LIST[1]

1.  February 2, 2000 Employment Application
2.  March 4, 2000 Form 191
3.  April 6, 2000 Form 191
4.  April 8, 2000 Form 191
5.  April 12, 2000 Form 191
6.  April 16, 2000 Form 191
7.  November 8, 2000 Form 191
8.  November 9, 2000 Form 191
9.  November 14, 2000 Form 191
10. December 9, 2000 Termination Report

---

[1] Defendant reserves the right to introduce exhibits in rebuttal to the evidence submitted by Plaintiff during the course of the trial. This list also does not include exhibits potentially used for impeachment purposes.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  |  |
|  | DEFENDANT, |
|  | THE STOP & SHOP SUPERMARKET |
|  | COMPANY LLC, |
|  |  |
|  | By its attorneys, |
|  |  |
|  | __/s/_____ |
|  | Daniel B. Klein |
|  | SEYFARTH SHAW LLP |
|  | World Trade Center East |
|  | Two Seaport Lane, Suite 300 |
|  | Boston, MA 02210 |
| Dated: April 2, 2007 | 617-946-4800 |

## CERTIFICATE OF SERVICE

I, Daniel B. Klein, hereby certify that on this 2nd day of April, 2007, a true copy of the foregoing document was served by overnight delivery to the Plaintiff, Christopher M. Devine, 6 Morgan Road, Mansfield, MA 02048.

___/s/_____
Daniel B. Klein